## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| **DONNA VOGEL**, individually and on behalf of all others similarly situated,<br><br>      Plaintiff,<br><br>   v.<br><br>**AETNA, INC.**,<br><br>      Defendant. | Case No. 3:23-cv-00740<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff DONNA VOGEL, individually, and on behalf of all others similarly situated ("Plaintiff"), through her undersigned attorneys, brings this action against Defendant AETNA, INC. ("Defendant" or "Aetna") and alleges upon personal knowledge as to her own actions and experiences, and upon information and belief as to all other matters, as follows:

### INTRODUCTION

1.     As a result of inadequate security, Aetna failed to protect the personally identifiable and health information of over a million people that subscribe to Aetna's health insurance. On information and belief, Defendant failed to comply with regulatory, ethical, and industry standards for cybersecurity and confidentiality of sensitive personal information, and failed to timely prevent, detect, and adequately respond to a foreseeable data breach carried out by cyber criminals.

2.     As a result of Aetna's inadequate security, unauthorized persons accessed information from Aetna's customers some time between approximately January 18, 2023 and January 30, 2023. The cyber criminals gained access to, copied, and stole Plaintiff's and Class

members' personal information through a flaw in managed file transfer ("MFT") software used by Aetna's benefits administration services provider, NationsBenefits (the "Data Breach").

3.     The information affected in the Data Breach included the following: full names, addresses, phone numbers, dates of birth, Social Security numbers ("Personal Identifying Information" or "PII"), and health insurance numbers, medical ID numbers, health plan subscriber identification numbers, date of service, medical device or product purchased, and provider/care giver name ("Personal Health Information" or "PHI") (collectively "PII/PHI").[1] Not every individual affected had all of these data elements impacted, or the same combination of                                                                                 data elements impacted.

4.     Notice of the Data Breach was unreasonably delayed. Plaintiff and some Class members were not notified until the end of April 2023, giving the criminals a head start to commit identity fraud, and theft.

5.     As a direct result of the Data Breach, Plaintiff and Class members have suffered numerous actual and concrete injuries and will suffer additional injuries into the future. Plaintiff seeks damages and other legal and equitable relief for herself and Class members for the following categories of harms: (a) invasion of privacy; (b) financial costs incurred mitigating the imminent risk of identity theft; (c) loss of time and loss of productivity incurred mitigating the imminent risk of identity theft, including medical identity theft; (d) loss of time and loss of productivity heeding warnings and following instructions in the data breach notification letters; (e) the cost of future monitoring for identity theft, including medical identity theft; and (f)

---

1  *See*  https://wgme.com/news/i-team/vendor-aetna-insurance-data-breach-maine (last visited May 30, 2023); *see also* https://apps.web.maine.gov/online/aeviewer/ME/40/cc06cdee-0715-4eea-8b33-c391dba8fe5e.shtml (last visited May 31, 2023); *see also* https://www.iowaattorneygeneral.gov/media/cms/4132023_NationsBenefits_Incident_No_A5074CDE9491F.pdf (last visited May 31, 2023).

deprivation of value of PII/PHI.

6.    Plaintiff brings this class action against Defendant for its negligence, negligence *per se*, breach of contract, and unjust enrichment. Plaintiff seeks injunctive relief, declaratory relief, money damages, and all other relief as authorized in equity or by law.

## THE PARTIES

7.    Plaintiff Donna Vogel is a citizen of Ohio.

8.    Defendant Aetna is a company organized under Pennsylvania law, with its principal place of business in Hartford, Connecticut.

## JURISDICTION AND VENUE

9.    Subject matter jurisdiction arises under 28 U.S.C. § 1332(d). This case is brought as a class action with an amount in controversy in excess of $5 million, exclusive of interest and costs, there are 100 or more proposed Class members, and at least one proposed Class member is a citizen of a state different from Defendant.

10.    This Court has personal jurisdiction over Defendant because Defendant transacts business in Connecticut, committed tortious acts in Connecticut, contracted with third party companies in Connecticut, and has its principal place of business in Connecticut.

11.    Venue is proper in this District because the acts and omissions giving rise to this action occurred in this District.

## FACTUAL ALLEGATIONS

### *Aetna's Promises and Obligations Regarding Protection of PII/PHI*

12.    Aetna's Notice of Privacy Practices promises to protect Plaintiff's and Class member's PII/PHI:

> **How we keep your information safe**
> We use administrative, technical and physical safeguards to keep
> your information from unauthorized access, and other threats and

3

hazards to its security and integrity. We comply with all state and federal laws that apply related to the security and confidentiality of your PHI. We don't destroy your PHI even when you end your coverage with us. We may need to use and share it even after your coverage terminates. (We describe the reasons for using or sharing in this Notice). We will continue to protect your information against inappropriate use or disclosure.[2]

13.    Aetna recognizes that it owes a duty to Plaintiff and Class members:

**How we comply with the law**
Federal privacy law requires us to keep your PHI private. And we must tell you about our legal duties and privacy practices. We must also follow the terms of the Notice in effect.[3]

14.    Aetna owed Plaintiff and Class members numerous statutory, regulatory, ethical, contractual, and common law duties to safeguard and keep Plaintiff's and Class members' PII/PHI confidential, safe, secure, and protected from unauthorized disclosure, access, dissemination, and theft.

### *The Data Breach*

15.    Plaintiff and Class members were required to provide their PII/PHI to Aetna to receive health insurance.

16.    Aetna contracted with NationsBenefits for benefits administration services, including to keep Plaintiff's and Class members' PII/PHI safe and secure, and prevent unauthorized access to the PII/PHI when the PII/PHI was being transferred between entities.

17.    NationsBenefits contracted with Fortra LLC to, *inter alia*, use its GoAnywhere MFT software to transfer Plaintiff's and Class members' PII/PHI.

18.    Fortra's GoAnywhere MFT software contained a flaw that was exploited by cyber criminals.

---

2    *See*    https://www.aetna.com/document-library/legal-notices/documents/health-notice-of-privacy-practices.pdf  (last visited May 31, 2023).
3 *Id.*

19.     On February 1, 2023, Fortra posted a security advisory in its customer portal regarding the zero-day vulnerability in its Fortra's GoAnywhere software. However, in order to view the initial security advisory, users had to create a (free) account in order to access the vulnerability report. The use of a customer portal to view the advisory was heavily criticized by cybersecurity experts.[4]

20.     Fortra did not fix the flaw in its GoAnywhere software until February 7, 2023, when it released a software patch for the flaw.

21.     Prior to the release of the patch for the flaw, unauthorized persons (reportedly the Russian-linked Clop gang) exploited the flaw to access and acquire data from more than 130 organizations, including NationsBenefits and Aetna.[5]

22.     Fortra first reported that the unauthorized access occurred between approximately January 28, 2023 and January 30, 2023, but upon further investigation later learned the unauthorized access occurred as early as January 18, 2023.[6]

23.     The Russian group Clop (sometimes styled as "CL0P") claimed responsibility for the Data Breach and stated that it accessed and took PII/PHI over the course of ten days.[7]  Clop has been active since February 2019, and it almost exclusively targets the healthcare sector.

24.     Currently, the full extent of the types of sensitive personal information, the scope of the Data Breach, and the details regarding how the Data Breach was carried out are all within the control of Fortra, NationsBenefits, Aetna, and their agents, counsel, and forensic security

---

4 See https://www.hhs.gov/sites/default/files/clop-allegedly-targeting-healthcare-industry-sector-alert.pdf (last visited May 19, 2023).
5 See https://www.fortra.com/blog/summary-investigation-related-cve-2023-0669 (last visited May 19, 2023); see also https://www.securityweek.com/fortra-completes-investigation-into-goanywhere-zero-day-incident/ (last Visited May 19, 2023).
6 See https://www.fortra.com/blog/summary-investigation-related-cve-2023-0669 (last visited May 23, 2023).
7 See https://www.hhs.gov/sites/default/files/clop-allegedly-targeting-healthcare-industry-sector-alert.pdf (last visited May 22, 2023).

vendors.

25.     Plaintiff and Class members are aware that the PII/PHI affected by the Data Breach creates an imminent risk of identity theft.

26.     The kind of information exfiltrated in the Data Breach would make it possible for malicious actors to carry out phishing attacks, social engineering, or even identity theft, including medical identity theft.

### *The Data Breach Was Preventable*

27.     Aetna contracted with NationsBenefits for safe and secure transfer of Plaintiff's and Class members' PII/PHI. NationsBenefits selected Fortra's GoAnywhere software for the file transfer of this PII/PHI.

28.     NationsBenefits reportedly has stopped using Fortra's GoAnywhere software and implemented additional procedures to further strengthen the security of its IT system environments.

29.     These actions demonstrate that the Data Breach could have been prevented by using a secure file transfer software, properly securing and encrypting the PII/PHI of Plaintiff and Class members, implementing additional procedures, and/or by implementing and following adequate procedures to monitor and detect data breaches.

30.     Defendant's negligence in safeguarding the PII/PHI of Plaintiff and Class members was exacerbated by the repeated warnings and alerts directed to U.S. companies warning that they should protect and secure sensitive data, especially in light of the substantial increase in cyberattacks specifically targeting healthcare providers. The healthcare industry is particularly vulnerable to cyberattacks, owing to their high propensity to pay a ransom, the value

of patient records, and often inadequate security.[8]

### The Data Breach Was Foreseeable

31.     The FBI has been warning the healthcare industry about the threat posed by the ransomware and others, and to be on the lookout for attacks.

32.     The United States Cybersecurity & Infrastructure Security Agency, Department of Justice, and Department of Health & Human Services issued a Joint Cybersecurity Advisory as early as on October 28, 2020, warning of an acute threat to U.S. hospitals and healthcare providers and advising them on how to "ensure that they take timely and reasonable precautions to protect their networks from these threats."[9]

33.     In 2021, the Healthcare Sector Cybersecurity Coordination Center warned about Clop as an active threat actor group targeting the healthcare and public health sector.[10]

34.     Despite the well-known risks and the need for effective protections, unauthorized individuals were able to access Plaintiff's and Class members' PII/PHI.

35.     Defendant had specific obligations imposed on it by contracts and law to ensure the adequate protection of such information. For example, as a covered entity under HIPAA, Defendant was required to maintain the confidentiality and security of Plaintiff's and Class members' PII/PHI.

### Defendant's HIPAA Violations

36.     Defendant is regulated by the Health Insurance Portability and Accountability Act ("HIPAA") (45 C.F.R. § 160.102), and is required to comply with the HIPAA Privacy Rule and

---

8  *See*  https://www.hhs.gov/sites/default/files/clop-allegedly-targeting-healthcare-industry-sector-alert.pdf (last visited May 19, 2023).
9 *See* https://www.cisa.gov/sites/default/files/publications/AA20302A_Ransomware%20_Activity_Targeting_the_Healthcare_and_Public_Health_Sector.pdf.pdf (last visited May 23, 2023).
10 *See*   https://www.hhs.gov/sites/default/files/clop-poses-ongoing-risk-to-hph-organizations.pdf    (last visit-ed May 25, 2023).

Security Rule, 45 C.F.R. Part 160 and Part 164, Subparts A and E ("Standards for Privacy of Individually Identifiable Health Information"), and Security Rule ("Security Standards for the Protection of Electronic Protected Health Information"), 45 C.F.R. Part 160 and Part 164, Subparts A and C, which establish national security standards and duties for Defendant's protection of medical information maintained in electronic form.

37.     HIPAA requires Defendant to "comply with the applicable standards, implementation specifications, and requirements" of HIPAA "with respect to electronic protected health information." 45 C.F.R. § 164.302.

38.     "Electronic protected health information" is defined as "individually identifiable health information ... that is (i) transmitted by electronic media; maintained in electronic media." 45 C.F.R. § 160.103.

39.     HIPAA's Security Rule requires Defendant to: (a) ensure the confidentiality, integrity, and availability of all electronic protected health information the covered entity or business associate creates, receives, maintains, or transmits; (b) protect against any reasonably anticipated threats or hazards to the security or integrity of such information; (c) protect against any reasonably anticipated uses or disclosures of such information that are not permitted; and (d) ensure compliance by its workforce.

40.     HIPAA also requires Defendant to "review and modify the security measures implemented ... as needed to continue provision of reasonable and appropriate protection of electronic protected health information," 45 C.F.R. § 164.306(c), and also to "[i]mplement technical policies and procedures for electronic information systems that maintain electronic protected health information to allow access only to those persons or software programs that have been granted access rights." 45 C.F.R. § 164.312(a)(1).

41.     The facts of the Data Breach establish that Defendant failed to comply with these Rules. The Data Breach resulted from a combination of inadequacies that demonstrate Defendant failed to comply with safeguards mandated by HIPAA regulations, including, but not limited to, the following:

(a)     Failing to ensure the confidentiality and integrity of electronic PHI that Defendant creates, receives, maintains, and transmits, in violation of 45 C.F.R. section 164.306(a)(1);

(b)     Failing to implement technical policies and procedures for electronic information systems that maintain electronic PHI to allow access only to those persons or software programs that have been granted access rights, in violation of 45 C.F.R. section 164.312(a)(1);

(c)     Failing to implement policies and procedures to prevent, detect, contain, and correct security violations, in violation of 45 C.F.R. section 164.308(a)(1);

(d)     Failing to identify and respond to suspected or known security incidents and mitigate, to the extent practicable, harmful effects of security incidents that are known to the covered entity, in violation of 45 C.F.R. section 164.308(a)(6)(ii);

(e)     Failing to protect against any reasonably-anticipated threats or hazards to the security or integrity of electronic PHI, in violation of 45 C.F.R. section 164.306(a)(2);

(f)     Failing to protect against any reasonably anticipated uses or disclosures of electronic PHI that are not permitted under the privacy rules regarding

9

individually identifiable health information, in violation of 45 C.F.R. section 164.306(a)(3);

(g)    Failing to ensure compliance with HIPAA security standard rules by its workforce, in violation of 45 C.F.R. section 164.306(a)(4);

(h)    Impermissibly and improperly using and disclosing PHI that is and remains accessible to unauthorized persons, in violation of 45 C.F.R. section 164.502, *et seq.*;

(i)    Failing to effectively train all members of its workforce (including independent contractors) on the policies and procedures with respect to PHI as necessary and appropriate for the members of its workforce to carry out their functions and to maintain security of PHI, in violation of 45 C.F.R. sections 164.530(b) and 164.308(a)(5); and

(j)    Failing to design, implement, and enforce policies and procedures establishing physical and administrative safeguards to reasonably safeguard PHI in compliance with 45 C.F.R. section 164.530(c).

### *Value of Personally Identifiable Information*

42.    The PII/PHI of individuals remains of high value to criminals, as evidenced by the prices they will pay through the dark web. Numerous sources cite dark web pricing for stolen identity credentials. For example, personal information can be sold at a price ranging from $40 to $200, and bank details have a price range of $50 to $200.[11] Experian reports that a stolen credit or debit card number can sell for $5 to $110 on the dark web.[12] Criminals can also purchase

---

11 *Your personal data is for sale on the dark web. Here's how much it costs,* Digital Trends, Oct. 16, 2019, *available at*: https://www.digitaltrends.com/computing/personal-data-sold-on-the-dark-web-how-much-it-costs/ (last visited May 23, 2023).

12 *Here's How Much Your Personal Information Is Selling for on the Dark Web*, Experian, Dec. 6, 2017, *available at*: https://www.experian.com/blogs/ask-experian/heres-how-much-your-personal-

access to entire company data breaches from $900 to $4,500.

43.     Social Security numbers, for example, are among the worst kind of personal information to have stolen because they may be put to a variety of fraudulent uses and are difficult for an individual to change.

44.     The Social Security Administration stresses that the loss of an individual's Social Security number can lead to identity theft and extensive financial fraud:

> A dishonest person who has your Social Security number can use it to get other personal information about you. Identity thieves can use your number and your good credit to apply for more credit in your name. Then, they use the credit cards and don't pay the bills, it damages your credit. You may not find out that someone is using your number until you're turned down for credit, or you begin to get calls from unknown creditors demanding payment for items you never bought. Someone illegally using your Social Security number and assuming your identity can cause a lot of problems.[13]

45.     It is incredibly difficult to change or cancel a stolen Social Security number. An individual cannot obtain a new Social Security number without significant paperwork and evidence of actual misuse. In other words, preventive action to defend against the possibility of misuse of a Social Security number is not permitted; an individual must show evidence of actual, ongoing fraud activity to obtain a new number.

46.     Even then, a new Social Security number may not be effective. According to Julie Ferguson of the Identity Theft Resource Center, "The credit bureaus and banks are able to link the new number very quickly to the old number, so all of that old bad information is quickly inherited into the new Social Security number."[14]

information-is-selling-for-on-the-dark-web/ (last visited May 23, 2023).

13 *Identity Theft and Your Social Security Number*, Social Security Administration, *available at*: https://www.ssa.gov/pubs/EN-05-10064.pdf (last visited May 23, 2023).

14 Bryan Naylor, *Victims of Social Security Number Theft Find It's Hard to Bounce Back*, NPR (Feb. 9, 2015), *available at*: http://www.npr.org/2015/02/09/384875839/data-stolen-by-anthem-s-hackers-has-

47.     Medical identity theft occurs when someone uses a person's name and sometimes other parts of their identity — such as insurance information — without the person's knowledge or consent to obtain medical services or goods, or uses the person's identity information to make false claims for medical services or goods.[15] Medical identity theft frequently results in erroneous entries being put into existing medical records, and can involve the creation of fictitious medical records in the victim's name.[16]

48.     Medical identity theft may result in someone using another person's information to see a doctor, get prescription drugs, or to file claims with an insurance company in the person's name. If the thief's medical treatment or diagnosis mixes with the person's treatment or diagnosis, the victim's health is at risk.[17]

49.     Medical identity theft is one of the most common, most expensive, and most difficult-to-prevent forms of identity theft.

50.     Indeed, a robust cyber black market exists in which criminals post stolen PII/PHI on multiple underground internet websites, commonly referred to as the dark web, to create fake insurance claims, purchase and resell medical equipment, or access prescriptions for illegal use or resale. According to a 2017 Javelin strategy and research presentation, fraudulent activities based on data stolen in data breaches that are between two and six years old had increased by nearly 400% over the previous four years.[18]

51.     According to Experian, one of the three major credit bureaus, medical records can

---

millionsworrying-about-identity-theft (last visited May 23, 2023).
15 *See* https://www.worldprivacyforum.org/category/med-id-theft/ (last visited May 23, 2023).
16 *Id.*
17 *See* https://oag.ca.gov/privacy/facts/medical-privacy/med-id-theft (last visited May 23, 2023).
18 *See* Brian Stack, Here's How Much Your Personal Information is Selling for on the Dark Web (2017), https://www.experian.com/blogs/ask-experian/heres-how-much-your-personal-information-is-selling-for-on-the-dark-web/ (last visited May 23, 2023).

be worth up to $1,000 per person on the dark web, depending upon completeness.[19] PII/PHI can

be sold at a price ranging from approximately $20 to $300.[20]

52.     Medical identity theft can also result in inaccuracies in medical records and costly

false claims. It can also have life-threatening consequences since if a victim's health information

is mixed with other records, it can lead to misdiagnosis or mistreatment. "Medical identity theft

is a growing and dangerous crime that leaves its victims with little to no recourse for recovery,"

reported Pam Dixon, executive director of World Privacy Forum. "Victims often experience

financial repercussions and worse yet, they frequently discover erroneous information has been

added to their personal medical files due to the thief's activities."[21]

53.     The Ponemon Institute found that medical identity theft can cost victims an

average of $13,500 to resolve per incident, and that victims often have to pay off the imposter's

medical bills to resolve the breach.[22]

54.     In another study by the Ponemon Institute in 2015, 31% of medical identity theft

victims lost their healthcare coverage as a result of the incident, while 29% had to pay to restore

their health coverage, and over half were unable to resolve the identity theft at all.[23]

55.     Based on the foregoing, the information compromised in the Data Breach is

---

19 *Id.*

20 *See* https://www.privacyaffairs.com/dark-web-price-index-2021/ (last visited May 23, 2023).

21 Michael Ollove, "The Rise of Medical Identity Theft in Healthcare," Kaiser Health News, (2/7/14), https://khn.org/news/rise-of-indentity-theft/ (last visited May 23, 2023); *see also*, Medical Identity Theft in the New Age of Virtual Healthcare, IDX (March 15, 2021), https://www.idx.us/knowledge-center/medical-identity-theft-in-the-new-age-of-virtual-healthcare (last visited May 23, 2023).

22 Brian O'Connor, Healthcare Data Breach: What to Know About Them and What to Do After One, Experian (June 14, 2018), https://www.experian.com/blogs/ask-experian/healthcare-data-breach-what-to-know-about-them-and-what-to-do-after-one/ (last visited May 23, 2023).

23 Ponemon Institute, Fifth Annual Study on Medical Identity Theft, (February, 2015), http://www.medidfraud.org/wp-content/uploads/2015/02/2014_Medical_ID_Theft_Study1.pdf(last visited 5/3/22).

significantly more valuable than the loss of, for example, only credit card information in a retailer data breach because, there, victims can cancel or close credit and debit card accounts. The information compromised in this Data Breach, including Social Security numbers and names, is impossible to "close" and difficult, if not impossible, to change.

56.     This data demands a much higher price on the black market. Martin Walter, senior director at cybersecurity firm RedSeal, explained: "Compared to credit card information, personally identifiable information and Social Security numbers are worth more than 10x on the black market."[24]

57.     Among other forms of fraud, identity thieves may obtain driver's licenses, government benefits, medical services, and housing or even give false information to police.

58.     The fraudulent activity resulting from the Data Breach may not come to light for years.

59.     There may be a time lag between when harm occurs versus when it is discovered, and also between when PII/PHI is stolen and when it is used. According to the U.S. Government Accountability Office ("GAO"), which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[25]

60.     At all relevant times, Defendant knew, or reasonably should have known, of the importance of safeguarding the PII/PHI of Plaintiff and Class members, including medical

---

24 Time Greene, *Anthem Hack: Personal Data Stolen Sells for 10x Price of Stolen Credit Card Numbers*, IT World, (Feb. 6, 2015), *available at*: https://www.networkworld.com/article/2880366/anthem-hack-personal-data-stolen-sells-for-10x-price-of-stolen-credit-card-numbers.html (last visited May 23, 2023).
25 *Report to Congressional Requesters*, GAO, at 29 (June 2007), available at: https://www.gao. gov /assets/gao-07-737.pdf (last visited May 23, 2023).

information such as their Health Plan Subscriber Identification Numbers, and of the foreseeable consequences that would occur if the PII/PHI was exfiltrated, including, specifically, the significant costs that would be imposed on Plaintiff and Class members.

61.     Plaintiff and Class members now face years of constant surveillance of their financial and personal records, monitoring, and loss of rights. Plaintiff and the Class are incurring and will continue to incur such damages in addition to any fraudulent use of their PII/PHI.

62.     The injuries to Plaintiff and Class members were directly and proximately caused by Defendant's failure to (a) use a secure file transfer software, (b) properly secure and encrypt the PII/PHI of Plaintiff and Class members, (c) implement the additional procedures that were only implemented after the Data Breach, and/or (d) implement and follow adequate procedures to monitor and detect data breaches.

**FACTS RELATED TO PLAINTIFF'S EXPERIENCE**

63.     Plaintiff receives health insurance from Aetna. As a condition of obtaining treatment, Plaintiff provided her PII/PHI to Aetna with the reasonable expectation that her PII/PHI would be maintained in a secure manner, and her PII/PHI would only be used for legitimate business purposes.

64.     NationsBenefits Holdings, LLC and its affiliates and subsidiaries (collectively, "NationBenefits") provides benefits administration services to Aetna.

65.     NationsBenefits used software provided by Fortra, the GoAnywhere MFT software, to exchange files containing Plaintiff's and Class members' PII/PHI with Aetna.

66.     NationsBenefits did not properly safeguard and protect Plaintiff's PII/PHI, leading to its exposure and exfiltration in the Data Breach.

67.     NationsBenefits did not provide notice of the Data Breach to Aetna customers until the end of April 2023.

68.     On or about April 27, 2023, Plaintiff received notice from NationsBenefits that her PII/PHI had been improperly accessed and/or obtained by unauthorized third parties in the Data Breach.

69.     NationsBenefits reportedly learned of the Fortra data security incident on February 7, 2023, and then took steps to secure its systems and conduct an investigation.

70.     NationsBenefits states that it "analyzed the impacted data to determine whether any individual's personal information was subject to unauthorized access or acquisition. On February 23, 2023, NationsBenefits confirmed that, unfortunately, some of your personal information was affected by the incident." *See* Exhibit 1. "The personal information involved included your First Name; Middle Initial; Last Name; Gender; Health Plan Subscriber Identification Number; Address; Phone Number; Date of Birth."

71.     In NationsBenefits' Notice of Data Breach Letter, Plaintiff and Class members are encouraged "to remain vigilant against incidents of identity theft and fraud, to review your account statements, and to monitor your free credit reports for suspicious activity and to detect errors." *See* Exhibit 1. Along with NationsBenefits' Notice of Data Breach Letter is a document entitled "General Information about Identity Theft Protection" sheet. *See* Exhibit 1.

72.     The Clop ransomware gang has claimed to have information from 130 companies in the Data Breach, has posted the names of the companies it has obtained PII/PHI from to its dark web leak website, and has leaked data.[26]

73.     As a result of the Data Breach, Plaintiff made reasonable efforts to mitigate the

---

26  *See* https://techmonitor.ai/technology/cybersecurity/fortra-cyberattack-ransomware-clop (last visited May 25, 2023); *see also* https://cybernews.com/news/virgin-group-cl0p-ransomware-gang-victim/ (last visited May 25, 2023).

impact of the Data Breach, including but not limited to: spending a significant amount of time researching the Data Breach and reviewing financial, healthcare, and other accounts for any indications of actual or attempted identity theft or fraud. Plaintiff has spent time and energy dealing with the Data Breach—valuable time Plaintiff otherwise would have spent on other activities—including but not limited to work or recreation.

74.     As a result of the Data Breach, Plaintiff has suffered anxiety, emotional distress, and loss of privacy as a result of the release of her PII/PHI, which he reasonably believed would be protected from unauthorized access and disclosure, including anxiety about unauthorized parties viewing, selling, and using her PII/PHI for purposes of identity theft and fraud. Plaintiff is very concerned about identity theft and fraud, as well as the consequences of such identity theft and fraud resulting from the Data Breach. Plaintiff is very concerned that her PII/PHI, which includes her Health Plan Subscriber Identification Number and date of birth, will be used to commit medical identity theft.

75.     Plaintiff suffered actual injury from having her PII/PHI compromised as a result of the Data Breach including, but not limited to (a) damage to and diminution in the value of her PII/PHI; (b) violation of privacy rights; and (c) present, imminent and impending injury arising from the increased risk of identity theft and fraud.

76.     As a result of the Data Breach, Plaintiff anticipates spending considerable time and money on an ongoing basis to try to mitigate and address harms caused by the Data Breach. As a result of the Data Breach, Plaintiff is at a present risk and will continue to be at increased risk of identity theft and fraud for years to come.

## CLASS ACTION ALLEGATIONS

77.     Plaintiff seeks to certify the following class pursuant to Fed. R. Civ. P. 23:

> All persons insured by Aetna whose PII/PHI was accessed by
> unauthorized persons in the Data Breach.

78.     Excluded from the Class are Defendant and Defendant's officers and directors; any entity in which Defendant has a controlling interest; and the affiliates, legal representatives, attorneys, successors, heirs, and assigns of Defendant. Excluded also from the Class are members of the judiciary to whom this case is assigned, their immediate families, and members of their staff.

79.     Plaintiff reserves the right to amend or modify the Class definition and/or create additional subclasses as this case progresses.

80.     <u>Numerosity</u>. The members of the Class are so numerous that joinder of all of them is impracticable. While the exact number of Class members is unknown to Plaintiff at this time, the company that provided benefits administration services to Aetna, NationsBenefits, has reported to the Maine Attorney General that 19,386 Maine residents have been affected and that the total number of persons affected is still to be determined.[27]

81.     <u>Commonality</u>. There are questions of law and fact common to the Class, which predominate over any questions affecting only individual Class members. These common questions of law and fact include, without limitation:

   a.     Whether Defendant unlawfully failed to secure Plaintiff's and Class
          members' PII/PHI;

   b.     Whether Defendant failed to utilize safe and secure file transfer software
          and implement and maintain reasonable security procedures and practices
          appropriate to the nature and scope of the information compromised in the
          Data Breach;

---

27 *See* https://apps.web.maine.gov/online/aeviewer/ME/40/cc06cdee-0715-4eea-8b33-
c391dba8fe5e.shtml (last visited).

c.     Whether Defendant failed to comply with applicable data security laws and regulations;

d.     Whether Defendant's data practices prior to and during the Data Breach were consistent with industry standards;

e.     Whether Defendant owed a duty to Plaintiff and Class members to safeguard their PII/PHI;

f.     Whether Defendant breached its duty to Plaintiff and Class members to safeguard their PII/PHI;

g.     Whether Plaintiff and Class members suffered legally cognizable damages as a result of Defendant's misconduct;

h.     Whether Defendant's conduct was negligent;

i.     Whether Defendant's acts, inactions, and practices complained of herein breached contracts with Plaintiff and Class members;

j.     Whether Defendant was unjustly enriched by unlawfully retaining a benefit conferred upon it by Plaintiff and Class members; and

k.     Whether Plaintiff and Class members are entitled to damages, punitive damages, treble damages, and/or injunctive or other equitable relief.

82.     Typicality. Plaintiff's claims are typical of those of other Class members because Plaintiff's information, like that of every other Class member, was compromised in the Data Breach.

83.     Adequacy of Representation. Plaintiff will fairly and adequately represent and protect the interests of the members of the Class. Plaintiff's counsel is competent and experienced in litigating class actions.

84.　Predominance. Defendant has engaged in a common course of conduct toward Plaintiff and Class members, in that all of Plaintiff's and Class members' PII/PHI was unlawfully accessed in the same way. The common issues arising from Defendant's conduct affecting Class members set out above predominate over any individualized issues. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

85.　Superiority. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation. Absent a class action, most Class members would likely find that the cost of litigating their individual claims is prohibitively high and would therefore have no effective remedy. The prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications with respect to individual Class members, which would establish incompatible standards of conduct for Defendant. In contrast, the conduct of this action as a class action presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each Class member.

86.　Defendant has acted on grounds that apply generally to the Class as a whole, so that class certification, injunctive relief, and corresponding declaratory relief are appropriate on a classwide basis.

**COUNT I**
**Negligence**
**(On Behalf of Plaintiff and the Class)**

87.　Plaintiff realleges and incorporates by reference paragraphs 1–86 as if fully set forth herein.

88.     Plaintiff and Class members were required to provide their PII/PHI to Aetna.

89.     In providing their PII/PHI, Plaintiff and Class members had a reasonable expectation that reasonable care would be exercised in the protection of their PII/PHI.

90.     Defendant, as a covered entity under HIPAA, had a duty to take reasonable measures for file transfers to protect the PII/PHI of Plaintiff  and Class members from unauthorized disclosure to third parties.

91.     Defendant has full knowledge of the sensitivity of the PII/PHI and the types of harm that Plaintiff and Class members could and would suffer if the PII/PHI were wrongfully disclosed in a Data Breach.

92.     Defendant knew or reasonably should have known that the failure to exercise due care in protecting PII/PHI, involved an unreasonable risk of harm to Plaintiff and Class members.

93.     Defendant had a duty to exercise reasonable care to prevent Plaintiff's and Class members' information from being compromised, lost, stolen, misused, and/or disclosed to unauthorized parties. This duty includes, among other things, ensuring that it and its business partners used file transfer software that would secure and protect Plaintiff's and Class members' PII/PHI.

94.     Defendant also had a duty to implement and maintain procedures to detect and prevent the improper access, exfiltration, and misuse of PII/PHI.

95.     Defendant's duty to use reasonable security measures arose as a result of Defendant's duty as a Covered Entity. *See* 45 C.F.R. § 160.103.

96.     A breach of security, unauthorized access, and resulting injury to Plaintiff and Class members was reasonably foreseeable, particularly in light of the flaws in Fortra's

GoAnywhere MFT software, the "additional procedures" that NationsBenefits added after the Data Breach to strengthen security, the detailed warnings published by governmental agencies, and news reports of other data breaches.

97.     Plaintiff and Class members were the foreseeable and probable victims due to the fact that it was their PII/PHI that Aetna possessed, stored, and transferred. Defendant knew or should have known of the inherent risks in transferring files containing PII/PHI, and the critical importance of providing adequate security for that PII/PHI.

98.     Given that Aetna obtains, stores, and transfers PII/PHI, the value of PII/PHI to cyber criminals, and the many reported data breaches, a foreseeable risk of harm to Plaintiff and Class members existed and exists.

99.     Plaintiff and Class members had no ability to protect their PII/PHI, and had no sign that Defendant was failing to implement and maintain reasonable data security practices over their PII/PHI, until they received their notification letters.

100.    Defendant was in a position to protect against the harm suffered by Plaintiff and Class members as a result of the Data Breach.

101.    Defendant had a duty to securely store and transfer PII/PHI to prevent the unauthorized disclosure and unauthorized sharing of the PII/PHI to criminals.

102.    Defendant, through its actions and/or omissions, unlawfully breached its duties to Plaintiff and Class members by failing to secure and safeguard the PII/PHI of Plaintiff and Class members.

103.    Defendant, through its actions and/or omissions, unlawfully breached its duty to Plaintiff and Class members by failing to have appropriate procedures in place to detect and prevent unauthorized dissemination of PII/PHI.

104.    Defendant, through its actions and/or omissions, unlawfully breached its duty to adequately and timely disclose to its customers, Plaintiff, and Class members the existence and scope of the Data Breach.

105.    But for Defendant's wrongful and negligent breach of duties owed to Plaintiff and Class members, the PII/PHI of Plaintiff and Class members would not have been compromised.

106.    There is a close causal connection between Defendant's failure to protect the PII/PHI of Plaintiff and Class members and the harm, or risk of imminent harm, suffered by Plaintiff and Class members. The PII/PHI of Plaintiff and Class members was lost and accessed as the proximate result of Defendant's failure to exercise reasonable care in safeguarding such PII/PHI.

107.    As a direct and proximate result of Defendant's numerous negligent acts and omissions, Plaintiff and Class members are at a substantial, impending, and imminent risk of identity theft, and they have been forced to take mitigation steps, thereby incurring costs, to ensure their personal and financial safety.

108.    Plaintiff and Class members must now closely monitor their financial and medical accounts to guard against future identity theft and fraud. Plaintiff and Class members have heeded such warnings to mitigate against the imminent risk of future identity theft and financial loss. Such mitigation efforts included, and will include into the future, protective steps. The loss of time and other mitigation costs are tied directly to guarding against and mitigating against the imminent risk of identity theft.

109.    As a direct and proximate result of Defendant's numerous negligent acts and omissions, Plaintiff  and Class members have suffered actual and concrete injuries and will suffer additional injuries into the future, including economic and non-economic damages in the

following forms: (a) invasion of privacy; (b) financial costs incurred mitigating the imminent risk of identity theft; (c) loss of time and loss of productivity incurred mitigating the imminent risk of identity theft, including medical identity theft; (d) loss of time and loss of productivity taking steps to mitigate the data breach, including the instructions in the Data Breach Letter; (e) the cost of future monitoring for identity theft, including medical identity theft; (f) loss of time and annoyance due to increased targeting with phishing attempts and fraudulent robo-calls; and (g) diminution of value of their PII/PHI.

110.    As a direct and proximate result of Defendant's negligence, Plaintiff and Class members are entitled to recover actual and punitive damages.

### COUNT II
### Negligence *per se*
### (On Behalf of Plaintiff and the Class)

111.    Plaintiff realleges and incorporates by reference paragraphs 1–86 as if fully set forth herein.

112.    Defendant is a covered entity under HIPAA. A "covered entity" is defined in relevant part as a "health plan." 45 C.F.R. § 160.103. As a health insurance company, Aetna is a covered entity.

113.    Defendant violated HIPAA regulations, including by:

- Failing to ensure the confidentiality and integrity of electronic PHI that Defendant creates, receives, maintains, or transmits, in violation of 45 C.F.R. section 164.306(a)(1);

- Failing to implement technical policies and procedures for electronic information systems that maintain electronic PHI to allow access only to those persons or software programs that have been granted access rights,

in violation of 45 C.F.R. section 164.312(a)(1);

- Failing to implement policies and procedures to prevent, detect, contain, and correct security violations, in violation of 45 C.F.R. section 164.308(a)(1);

- Failing to identify and respond to suspected or known security incidents and mitigate, to the extent practicable, harmful effects of security incidents that are known to the covered entity, in violation of 45 C.F.R. section 164.308(a)(6)(ii);

- Failing to protect against any reasonably-anticipated threats or hazards to the security or integrity of electronic PHI, in violation of 45 C.F.R. section 164.306(a)(2);

- Failing to protect against any reasonably anticipated uses or disclosures of electronic PHI that are not permitted under the privacy rules regarding individually identifiable health information, in violation of 45 C.F.R. section 164.306(a)(3);

- Failing to ensure compliance with HIPAA security standard rules by its workforce, in violation of 45 C.F.R. section 164.306(a)(4);

- Impermissibly and improperly using and disclosing PHI that is and remains accessible to unauthorized persons, in violation of 45 C.F.R. section 164.502, *et seq.*;

- Failing to effectively train all members of its workforce (including

25

independent contractors) on the policies and procedures with respect to PHI as necessary and appropriate for the members of its workforce to carry out their functions and to maintain security of PHI, in violation of 45 C.F.R. sections 164.530(b) and 164.308(a)(5); and,

- Failing to design, implement, and enforce policies and procedures establishing physical and administrative safeguards to reasonably safeguard PHI in compliance with 45 C.F.R. section 164.530(c).

114.   Defendant also violated the duties applicable to it under the Federal Trade Commission Act (15 U.S.C. § 45, *et seq*.) from engaging in "unfair or deceptive acts or practices in or affecting commerce." The FTC, pursuant to that Act, has concluded that a company's failure to maintain reasonable and appropriate data security for sensitive personal information is an "unfair practice" in violation of the FTC Act.

115.   "Section 5 of the FTC Act [15 U.S.C. § 45] is a statute that creates enforceable duties, and this duty is ascertainable as it relates to data breach cases based on the text of the statute and a body of precedent interpreting the statute and applying it to the data beach context." *In re Capital One Consumer Data Sec. Breach Litig.*, 488 F. Supp. 3d 374, 407 (E.D. Va. 2020). "For example, in *F.T.C. v. Wyndham Worldwide Corp.*, 799 F.3d 236, 240 (3d Cir. 2015), the United States Court of Appeals for the Third Circuit affirmed the FTC's enforcement of Section 5 of the FTC Act in data breach cases." *Capital One*, 488 F. Supp. 3d at 407.

116.   Plaintiff's and Class members' PII/PHI was and is nonpublic personal information and customer information.

117.   Plaintiff and Class members are in the group of persons that HIPAA and the FTC Act were enacted and implemented to protect, and the harms they suffered in the Data Breach as

a result of Defendant's violations of HIPAA and the FTC Act were the types of harm the statutes and regulations are designed to prevent.

118.    As a direct and proximate result of Defendant's numerous negligent acts and omissions, Plaintiff and Class members are at a substantial, impending, and imminent risk of identity theft, and they have been forced to take mitigation steps, thereby incurring costs, to ensure their personal and financial safety. Plaintiff  and Class members have suffered actual and concrete injuries and will suffer additional injuries into the future, including economic and non-economic damages in the following forms: (a) invasion of privacy; (b) financial costs incurred mitigating the imminent risk of identity theft; (c) loss of time and loss of productivity incurred mitigating the imminent risk of identity theft, including medical identity theft; (d) loss of time and loss of productivity taking steps to mitigate the data breach, including the instructions in the Data Breach Letter; (e) the cost of future monitoring for identity theft, including medical identity theft; (f) loss of time and annoyance due to increased targeting with phishing attempts and fraudulent robo-calls; and (g) diminution of value of their PII/PHI.

119.    As a direct and proximate result of the conduct of Defendant that violated HIPAA and the FTC Act, Plaintiff and Class members have suffered and will continue to suffer the foreseeable economic and non-economic harms as described herein.

120.    As a direct and proximate result of Defendant's negligence, Plaintiff and Class members are entitled to recover actual and punitive damages.

**COUNT III**
**Breach of Contract**
**(On Behalf of Plaintiff and the Class)**

121.    Plaintiff realleges and incorporates by reference paragraphs 1–86 as if fully set forth herein.

122.    Aetna and Plaintiff and Class members entered into contracts wherein Aetna agreed to provide health insurance to its customers and promised to safeguard, secure, and protect Plaintiff's and Class members' PII/PHI. Aetna also implicitly promised to timely and accurately provide notification if Plaintiff's and Class members' PII/PHI had been breached and compromised or stolen.

123.    Plaintiff and Class members fully performed their obligations under the contracts.

124.    Aetna breached its contracts when it failed to safeguard, secure, and protect the PII/PHI of Plaintiff and Class members and allowed unauthorized persons to access and exfiltrate the PII/PHI.

125.    As a direct and proximate result of Aetna's breach of its contract, Plaintiff and Class members are at a substantial, impending, and imminent risk of identity theft (including medical identity theft), and they have been forced to take mitigation steps, to ensure their personal and financial safety.

126.    As a direct and proximate result of Aetna's breach of contract, Plaintiff and Class members have suffered actual and concrete injuries and will suffer additional injuries into the future, including economic and non-economic damages in the following forms: (a) invasion of privacy; (b) financial costs incurred mitigating the imminent risk of identity theft; (c) loss of time and loss of productivity incurred mitigating the imminent risk of identity theft, including medical identity theft; (d) loss of time and loss of productivity taking steps to mitigate the data breach, including the instructions in the Data Breach Letter; (e) the cost of future monitoring for identity theft, including medical identity theft; (f) loss of time and annoyance due to increased targeting with phishing attempts and fraudulent robo-calls; and (g) diminution of value of their PII/PHI.

127.    As a direct and proximate result of Defendant's above-described breach of

contract, Plaintiff and Class members are entitled to recover actual, consequential, and nominal damages.

### COUNT IV
### Unjust Enrichment
### (On Behalf of Plaintiff and the Class)

128.     Plaintiff realleges and incorporates by reference paragraphs 1–86 as if fully set forth herein.

129.     This count is pled in the alternative to the breach of contract claim.

130.     Plaintiff and Class members paid for Aetna health insurance, a portion of which was intended to cover data security.

131.     Defendant understood and appreciated that Plaintiff's and Class members' PII/PHI was private and confidential, and its value depended upon Defendant maintaining the privacy and confidentiality of that information.

132.     A benefit was conferred upon Defendant by payment for its health insurance with the understanding that Defendant would implement and maintain reasonable data privacy and security practices and procedures. Plaintiff and Class members should have received adequate protection and data security for their PII/PHI.

133.     Defendant knew Plaintiff and Class members conferred a benefit which Defendant accepted. Defendant profited from these transactions and appreciated the benefits.

134.     Defendant failed to provide reasonable security, safeguards, and protections to the PII/PHI of Plaintiff and Class members.

135.     Defendant should not be permitted to retain money rightfully belonging to Plaintiff and Class members, because Defendant failed to implement appropriate data security measures resulting in the Data Breach.

136.    Defendant accepted and wrongfully retained these benefits to the detriment of Plaintiff and Class members.

137.    Defendant's enrichment at the expense of Plaintiff and Class members is and was unjust.

138.    As a result of Defendant's wrongful conduct, as alleged above, Plaintiff and Class members seek restitution of their money paid for health insurance—a portion of which was for data security—and disgorgement of all profits, benefits, imposition of a constructive trust, and other compensation obtained by Defendant, plus attorneys' fees, costs, and interest thereon.

**COUNT V**
**Violation of Conn. Gen. Stat. § 38a-988**
**(On behalf of Plaintiff and the Class)**

139.    Plaintiff realleges and incorporates by reference paragraphs 1–86 as if fully set forth herein.

140.    The defendant was at all times mentioned herein an insurance institution as defined in Conn. Gen. Stat. § 38a-976.

141.    The disclosures of personal and privileged information by the defendant as set forth above occurred in violation of Conn. Gen. Stat. § 38a-988 and were not subject to any of the exceptions to the prohibition on the disclosure of personal and privileged information under Conn. Gen. Stat. § 38a-988.

**COUNT VI**
**Violation of Conn. Gen. Stat. § 42-110b via §38a-816(1)**
**(On behalf of Plaintiff and the Class)**

142.    Plaintiff realleges and incorporates by reference paragraphs 1–86 as if fully set forth herein.

143.    The defendant represented to the plaintiff as part of the benefits, advantages,

conditions, or terms of its policy of insurance that the plaintiff's personal and privileged information would be protected against inappropriate use or disclosure.

144.    The defendant knew, or should have known, that this representation was false in violation of Conn. Gen. Stat. §38a-816(1).

145.    The plaintiff reasonably relied on the defendant's misrepresentation.

146.    As a direct and proximate result of Defendant's numerous negligent acts and omissions, Plaintiff and Class members are at a substantial, impending, and imminent risk of identity theft, and they have been forced to take mitigation steps, thereby incurring costs, to ensure their personal and financial safety.

147.    Plaintiff and Class members must now closely monitor their financial and medical accounts to guard against future identity theft and fraud. Plaintiff and Class members have heeded such warnings to mitigate against the imminent risk of future identity theft and financial loss. Such mitigation efforts included, and will include into the future, protective steps. The loss of time and other mitigation costs are tied directly to guarding against and mitigating against the imminent risk of identity theft.

148.    As a direct and proximate result of Defendant's numerous negligent acts and omissions, Plaintiff and Class members have suffered actual and concrete injuries and will suffer additional injuries into the future, including economic and non-economic damages in the following forms: (a) invasion of privacy; (b) financial costs incurred mitigating the imminent risk of identity theft; (c) loss of time and loss of productivity incurred mitigating the imminent risk of identity theft, including medical identity theft; (d) loss of time and loss of productivity taking steps to mitigate the data breach, including the instructions in the Data Breach Letter; (e) the cost of future monitoring for identity theft, including medical identity theft; (f) loss of time

and annoyance due to increased targeting with phishing attempts and fraudulent robo-calls; and (g) diminution of value of their PII/PHI.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the Class, prays for judgment against Defendant and in Plaintiff's favor, as follows:

a)   For an Order certifying this action as a Class action and appointing Plaintiff as the Class Representative and his counsel as Class Counsel;

b)   For an award of actual damages and compensatory damages, in an amount to be determined, as allowable by law;

c)   For an award of punitive damages, as allowable by law;

d)   For an award of attorneys' fees and costs, and any other expense, including expert witness fees;

e)   For equitable relief enjoining Defendant from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of Plaintiff's and Class members' PII/PHI, and from refusing to issue prompt, complete, and accurate disclosures regarding the Data Breach;

f)   For equitable relief compelling Defendant to utilize appropriate methods and policies with respect to consumer data security;

g)   For equitable relief requiring restitution and disgorgement of the revenues wrongfully retained as a result of Defendant's wrongful conduct;

h)   Imposition of a constructive trust for the benefit of Plaintiff and Class members;

i)   Pre- and post-judgment interest on any amounts awarded; and,

j)       Such other and further relief as this court may deem just and proper.

### JURY TRIAL DEMANDED

Plaintiff demands a trial by jury on all claims so triable.

Plaintiff John Vogel, individually, and on behalf of all others similarly situated,

By: */s/    John Kanca*
            Fed. Bar No.: ct30773
            The Kanca Law Firm, LLC
            40 Richards Avenue, Suite 353
            Norwalk, CT 06854
            Phone: (203) 806-7003
            Fax: (833) 239-1928
            john@connecticutinjury.law

            Marc E. Dann (*pro hac vice* anticipated)
            Brian D. Flick (*pro hac vice* anticipated)
            **DANN LAW**
            15000 Madison Avenue
            Lakewood, Ohio 44107
            Phone: (216) 373-0539
            Fax: (216) 373-0536
            *notices@dannlaw.com*

            Thomas A. Zimmerman, Jr. (*pro hac vice* anticipated)
            *tom@attorneyzim.com*
            Sharon A. Harris (*pro hac vice* anticipated)
            *sharon@attorneyzim.com*
            **ZIMMERMAN LAW OFFICES, P.C.**
            77 W. Washington Street, Suite 1220
            Chicago, Illinois 60602
            Phone: (312) 440-0020
            Fax: (312) 440-4180
            www.attorneyzim.com

            Counsel for Plaintiff and the Class

33

JS 44 (Rev. 04/21)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Donna Vogel

**(b)** County of Residence of First Listed Plaintiff    Trumbull
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

John Kanca, 40 Richards Ave., Suite 353, Norwalk, CT
06854  Tel: (203) 806-7003

## DEFENDANTS

Aetna Inc.

County of Residence of First Listed Defendant    Hartford
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | | | |
|---|---|---|---|
| ☐ 1 | U.S. Government Plaintiff | ☐ 3 | Federal Question *(U.S. Government Not a Party)* |
| ☐ 2 | U.S. Government Defendant | ☒ 4 | Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY**    **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane    ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal | ☐ 376 Qui Tam (31 USC |
| ☐ 130 Miller Act | ☐ 315 Airplane Product      Product Liability | |      28 USC 157 |      3729(a)) |
| ☐ 140 Negotiable Instrument |      Liability    ☐ 367 Health Care/ | | **INTELLECTUAL** | ☐ 400 State Reapportionment |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel &      Pharmaceutical | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
|      & Enforcement of Judgment |      Slander      Personal Injury | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers'      Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted |      Liability    ☐ 368 Asbestos Personal | | ☐ 835 Patent - Abbreviated | ☐ 460 Deportation |
|      Student Loans | ☐ 340 Marine      Injury Product | |      New Drug Application | ☐ 470 Racketeer Influenced and |
|      (Excludes Veterans) | ☐ 345 Marine Product      Liability | | ☐ 840 Trademark |      Corrupt Organizations |
| ☐ 153 Recovery of Overpayment |      Liability    **PERSONAL PROPERTY** | **LABOR** | ☐ 880 Defend Trade Secrets | ☐ 480 Consumer Credit |
|      of Veteran's Benefits | ☐ 350 Motor Vehicle    ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards |      Act of 2016 |      (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle    ☐ 371 Truth in Lending |      Act | | ☐ 485 Telephone Consumer |
| ☐ 190 Other Contract |      Product Liability    ☒ 380 Other Personal | ☐ 720 Labor/Management | **SOCIAL SECURITY** |      Protection Act |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal      Property Damage |      Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 196 Franchise |      Injury    ☐ 385 Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ |
| | ☐ 362 Personal Injury -      Product Liability | ☐ 751 Family and Medical | ☐ 863 DIWC/DIWW (405(g)) |      Exchange |
| |      Medical Malpractice |      Leave Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS**    **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights    **Habeas Corpus:** | ☐ 791 Employee Retirement | | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting    ☐ 463 Alien Detainee |      Income Security Act | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment    ☐ 510 Motions to Vacate | | ☐ 870 Taxes (U.S. Plaintiff |      Act |
| ☐ 240 Torts to Land | ☐ 443 Housing/      Sentence | |      or Defendant) | ☐ 896 Arbitration |
| ☐ 245 Tort Product Liability |      Accommodations    ☐ 530 General | | ☐ 871 IRS—Third Party | ☐ 899 Administrative Procedure |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities -    ☐ 535 Death Penalty | **IMMIGRATION** |      26 USC 7609 |      Act/Review or Appeal of |
| |      Employment    **Other:** | ☐ 462 Naturalization Application | |      Agency Decision |
| | ☐ 446 Amer. w/Disabilities -    ☐ 540 Mandamus & Other | ☐ 465 Other Immigration | | ☐ 950 Constitutionality of |
| |      Other    ☐ 550 Civil Rights |      Actions | |      State Statutes |
| | ☐ 448 Education    ☐ 555 Prison Condition | | | |
| |    ☐ 560 Civil Detainee -      Conditions of      Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | | |
|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation - Transfer | ☐ 8 Multidistrict Litigation - Direct File |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Class Action Fairness Act, 28 U.S.C. § 1332(d)(2)

Brief description of cause:
Negligence, Breach of Contract, Unjust Enrichment, C.G.S. § 38a-988, C.G.S. § 42-110b

## VII. REQUESTED IN COMPLAINT:

☒ CHECK IF THIS IS A **CLASS ACTION**
UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:

JURY DEMAND:    ☒ Yes    ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*    JUDGE _____    DOCKET NUMBER _____

| DATE | SIGNATURE OF ATTORNEY OF RECORD |
|---|---|
| Jun 7, 2023 | /s/ John Kanca |

**FOR OFFICE USE ONLY**

RECEIPT # _____    AMOUNT _____    APPLYING IFP _____    JUDGE _____    MAG. JUDGE _____